**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES CANNON JR.**, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>**COMCAST CORPORATION; THE COMCAST CORPORATION BENEFITS FIDUCIARY COMMITTEE; and JOHN DOES 1–20**,<br><br>          Defendants. | Civil Action No.:<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, James Cannon Jr. ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Comcast Corporation ("Comcast"), the Comcast Corporation Benefits Fiduciary Committee (the "Committee"), and the individual members of the Committee during the relevant time period (collectively, the "Defendants"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**NATURE OF THE ACTION**

1.       It is both unfair and unlawful for entities like Comcast to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without making available a reasonable alternative standard to avoid those surcharges. This lawsuit challenges Defendants' unlawful practice of charging a tobacco surcharge under the Comcast Comprehensive Health and Welfare Benefit Plan (the "Plan") in a manner that violates the Employee Retirement

1

Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness programs that promote health if, and *only if*, such programs strictly comply with the criteria governing these programs, including: (i) making available a meaningful and accessible reasonable alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclosing the availability of that alternative standard, the means to access it, and the right to a physician-directed alternative in "all plan materials" describing the surcharge; and (iii) making available the "full reward" to all participants who satisfy the reasonable alternative standard, including retroactive reimbursement of surcharges paid while completing the alternative. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j). Comcast does not do these things. Instead, it imposes a discriminatory $25-per-paycheck tobacco surcharge while failing to make available a compliant reasonable alternative standard, failing to notify participants of the "full reward" or any avenue to obtain it, and failing to provide the required physician-accommodation statement—violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.    Tobacco surcharges have become more prevalent in recent years but, to be lawful, plans must make available a compliant "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers *must* adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework

2

that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements.

3.      ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, an employer must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard; plans must also provide proper notice to all participants. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Comcast's Plan fails to clearly establish a reasonable alternative standard, imposes a $25-per-paycheck surcharge on all tobacco users, does not disclose a compliant mechanism by which a participant who completes a cessation program mid-year may obtain the "full reward," fails to provide proper notice disclosures in "all plan materials" discussing the surcharge, and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

5.      Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to

---

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **the same, full reward must be provided to that individual** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1,

rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** ...." *Id.*, 33160 (emphasis added). Defendants violate these requirements by failing to make available a *reasonable* alternative standard that provides full reimbursement to employees who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants of all the avenues available to them to avoid the surcharge, including in benefit guides, plan documents, and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

6.      Defendants cannot qualify for the statutory safe harbor because, while they impose a health-based surcharge, it does not comply with the requirements for a lawful wellness program. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*id*., 33160; emphasis added) for a wellness program to be lawful under ERISA. 78 Fed. Reg. at 33160. Its core deficiency is that it does not make available a reasonable alternative standard that provides the "full reward" to ***all*** similarly situated individuals who complete it, as required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). Although Comcast's SPD identifies a tobacco cessation program, neither the SPD nor other Plan documents disclose a mechanism by which a participant who completes the program mid-year may avoid or recover surcharges already deducted during the Plan year. Instead, the only avenue the SPD discloses for a tobacco user to

---

the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

avoid the surcharge is to enroll in and "complete" the cessation program by, upon information and belief, a specific date, with no statement that the participant will receive the "full reward" for the entire Plan year upon completion. As a result, Comcast allows participants to partake in a cessation effort and to complete the program but fails to provide those individuals with retroactive reimbursement. Instead, upon information and belief, Comcast uses these unlawfully obtained funds to offset its own contributions to the Plan and earns interest on amounts that would otherwise have been remitted to the Plan.

7.      Defendants also violate ERISA's wellness program regulations by failing to provide the notice required by statute and regulation, which is an independent basis for liability. Federal law requires that a plan "disclose in *all plan materials* describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added); *see also* 29 C.F.R. § 2590.702(f)(4)(v). The alternative standard Defendants identify in the SPD is not a *reasonable* alternative standard, because it does not make available the full reward to all similarly situated participants who complete it. The SPD tells tobacco users only that "they can avoid the tobacco-user rate by enrolling in and completing Comcast's Tobacco Cessation Program," using language that says nothing about surcharges already paid. The SPD does not disclose that completion of the cessation program during the Plan year entitles a participant to the same financial benefit as a non-tobacco user, does not explain when or how any premium adjustment would be applied, and contains no statement that completion will result in a refund of surcharges already withheld. The notice Comcast provides therefore does not describe a reasonable alternative standard, only an alternative under which participants pay the full surcharge for the portion of the Plan year before completion, with no mechanism to recover those amounts.

8. Upon information and belief, additional Plan materials distributed to participants describing or implementing the tobacco surcharge, including the Plan's annual benefits guide and informative documents discussing the tobacco surcharge, fail to include the disclosures required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). Upon information and belief, these additional materials are participant-facing, discuss the terms of the program, including information on the rates, to whom the surcharge applies, and the availability of a cessation program, but do not disclose that completion of the cessation program during the Plan year entitles a participant to relief from surcharges already assessed. Further, these additional participant-facing materials fail to include the required physician-accommodation statement. These notice failures, considered together with the SPD's defective disclosure, independently violate ERISA's wellness program regulations.

9. These disclosure failures are not technical defects. The Final Regulations make clear that where a plan imposes a premium differential based on tobacco use, its disclosures must include notice of the availability of a reasonable alternative standard and of an option to involve participants' physicians. *See* 78 Fed. Reg. at 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). Proper notice is critical because failing to notify participants can chill engagement with the program of health promotion and deter participants from taking steps to better their health. Because Comcast's Plan materials do not contain these required disclosures, Comcast cannot invoke ERISA's wellness program safe harbor as an affirmative defense. The tobacco surcharge imposed through the Plan therefore constitutes unlawful discrimination based on a health-status-related factor in violation of ERISA.

10. Because Comcast imposes a $25-per-paycheck tobacco surcharge and does not make available a compliant reasonable alternative standard or provide the required notice in *all*

Plan materials discussing the surcharge, the Plan fails to satisfy the essential regulatory criteria, which "must be satisfied." *Id.* at 33160. As a result of these deficiencies, Defendants cannot take advantage of the statutory safe harbor and, therefore, the surcharge functions as a penalty rather than a compliant wellness incentive. Deficient and misleading notice is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

11.    This Complaint alleges that Comcast imposes a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge and without providing required notice. Comcast bears the burden of proving that its tobacco surcharge is lawful by showing that its wellness program fully complies with every requirement under ERISA. Charging participants a tobacco surcharge while not informing them of a reasonable alternative standard that makes available the "full reward," and failing to provide proper notice, makes the surcharge facially noncompliant. No amount of post hoc justifications can cure these fundamental defects. This type of premium differential is permissible only if employers meet strict criteria, which Comcast does not. Comcast's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

12.    Participants like Mr. Cannon are permitted to challenge a surcharge when a non-compliant wellness program is made available in place of a reasonable alternative standard or when employers provide deficient or misleading information. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions along with facts showing the specific deficiencies in the wellness program, the burden shifts to the employer, Comcast, to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation

to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 702–04 (2025) (reaffirming that "the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*." (emphasis in original)).

13.     Plaintiff is an employee of Comcast who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and his family, and continues to impose such a burden on those similarly situated.

14.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendants from continuing to profit from their violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

15.     Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of Minnesota residing in the County of Anoka. Plaintiff is an employee of Comcast who paid a tobacco surcharge of $25 per paycheck (roughly $650 annually) under the Plan. Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

16.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

9

17. Comcast is a Pennsylvania corporation with its principal place of business at One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103. Comcast is a global media and technology company that, through its subsidiaries and affiliates, including Comcast NBCUniversal, provides a wide range of communications, entertainment, and content services to customers throughout the United States. Comcast is the Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Comcast exercises discretionary authority and control over the management and administration of the Plan, including the design, implementation, and communication of the tobacco surcharge, and is therefore a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). At all relevant times, Comcast employed tens of thousands of employees and maintained a Plan covering a substantial number of participants and beneficiaries. The Plan is an employee welfare benefit plan subject to ERISA, 29 U.S.C. § 1002(1) and (3). As of December 31, 2024, the Plan covered more than 90,000 participants.

18. The Committee is identified as the "Plan Administrator" and is located in or around Philadelphia, Pennsylvania. The Committee is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), with respect to the design, administration, and communication of the tobacco surcharge.

19. Defendants John Does 1–20 are individuals, the identities and capacities of which are presently unknown to Plaintiff, that exercised discretionary authority over the administration, management, or disposition of Plan assets, including the tobacco surcharge, and are therefore fiduciaries under ERISA § 3(21)(A). Plaintiff reserves the right to amend the Complaint to identify these Defendants when their identities are ascertained.

**JURISDICTION AND VENUE**

20.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21.     This Court has personal jurisdiction over Defendants because Defendants are headquartered in and have significant operations in this District, Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff in Pennsylvania, and Defendants have purposefully availed themselves of the privilege of conducting business in Pennsylvania.

22.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, Comcast maintains its principal place of business and conducts business in this District, and Defendants have substantial contacts with and may be found in this District.

**FACTUAL BACKGROUND**

I.     **DEFENDANTS' TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

A. **Statutory and Regulatory Requirements**

23.     ERISA prohibits any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as

a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

24.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to **_programs of health promotion and disease prevention_**" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe harbor exception—must strictly adhere to the mandated regulatory requirements.

25.    Congress directed the Departments to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under 29 U.S.C. § 1182, and 42 U.S.C. § 300gg-4. _See_ 29 U.S.C. §§ 1135 and 1191c, 42 U.S.C. §§ 300gg-4(n) and 300gg-92. This authority empowers the respective Secretaries to prescribe regulations as necessary or appropriate to carry out the provisions of Title I of ERISA.

26.    Exercising this delegated authority, in 2006, the Departments issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). _See_ Final Regulations, 33158–59. Then, in 2010, Congress adopted the language of the 2006 version of the regulations nearly verbatim, except in one notable way: Congress added the word "full" to modify "the reward" that had to be made available to those in a wellness program. _Compare_ 71 Fed. Reg. 75014, 75036 (2006) ("The reward under the program must be available to all similarly situated individuals") _with_ 42 U.S.C. § 300gg-4(j)(3)(D) ("The **_full_** reward under the wellness program shall be made available to all similarly situated individuals"). After that, in November 2012, the Departments operationalized the statutory language with an improved regulatory framework that was approved and signed in 2013 to be effective January 1, 2014. 78 Fed. Reg. at 33158–60.

27.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

28.     The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if all of the [] requirements are satisfied***." (emphasis added)).

**B.  Regulatory Criteria**

29.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: Programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: Notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physicians' recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

30.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

31.     Regarding the first criterion, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." 71 Fed. Reg. at 75018. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

32.     A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . .." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

33.    The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in, or participation in, a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

34.    For health-contingent wellness programs, the Final Regulations require that the notice be disclosed "in *all* plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## II.    DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

35.    Defendants' tobacco surcharge is discriminatory because they do not make available a compliant outcome-based wellness program that would allow all similarly situated individuals to obtain the full amount of the reward during a given Plan year. Under the Plan, participants identified as tobacco users are assessed a tobacco surcharge in the amount of $25 per

paycheck (approximately $650 annually) on top of the otherwise applicable premium contributions for medical coverage. The surcharge is collected through employees' regular payroll deductions for medical coverage and applies throughout the Plan year.

36. Comcast discloses the existence of the tobacco surcharge to participants in the Plan's SPD and in additional participant-facing Plan materials including the annual benefits guide, open enrollment materials, and tobacco-status attestation forms. The SPD is one of the documents Comcast has available to participants that describes the terms of the Plan's medical coverage, including premium contributions, but, upon information and belief, is not the primary document participants rely on when making their enrollment elections.

37. Comcast's SPD describes the tobacco surcharge in a single section titled "Tobacco Cessation," which is the only place in the SPD where the surcharge or any cessation option is mentioned. That section states, in relevant part:

> All employees enrolled in a Comcast NBCUniversal medical plan must declare their tobacco status, or they will default into their prior year's tobacco-user election (a $50 per month surcharge is added to the regular required plan contribution). Employees who declare as a tobacco user can avoid the tobacco-user rate by enrolling in and completing Comcast's Tobacco Cessation Program. . . .
>
> All benefits-eligible employees, spouses/domestic partners/civil union partners and adult dependents are eligible to participate in the program at no cost. To enroll in the program, employees can contact ComPsych at 1-888-515-4327. . . .
>
> Employees also have the option to enroll in a tobacco cessation program through their Primary Care Physician (PCP). To receive credit for attending the program, employees will need to have their PCP complete the tobacco cessation completion form. This option is always available to employees.

That "Tobacco Cessation" section is the extent of the SPD's discussion of the tobacco surcharge.

38. Comcast violates the full reward rule. The SPD tells tobacco users only that they "can avoid the tobacco-user rate by enrolling in and completing Comcast's Tobacco Cessation

Program" and that they may alternatively enroll in a cessation program through their PCP. Nowhere does the SPD disclose that completion of either program during the Plan year entitles a participant to the "full reward" (i.e., relief from the surcharge for the entire Plan year, including a refund of surcharges already withheld). Nor do Comcast's materials explain when or how any premium adjustment would be applied following completion of one of those alternative standards. By structuring and communicating the program in a manner that withholds the full reward from participants who would satisfy an alternative standard during the Plan year, Comcast denies uniform access to the full reward and treats similarly situated individuals differently based on health status.

39.     Although the SPD identifies a Tobacco Cessation Program administered by ComPsych and a separate PCP-based cessation option, the alternative Comcast specifies is not a *reasonable* alternative standard within the meaning of 29 C.F.R. § 2590.702(f)(4). The regulations require that the alternative standard make available the same, full reward as is provided to participants who meet the initial standard; a requirement that, by definition, includes retroactive relief for the period before completion. *See* 78 Fed. Reg. at 33163. The cessation program Comcast specifies fails that requirement because, as disclosed, completion of the program eliminates the surcharge only prospectively, with no mechanism for the participant to recover surcharges already deducted from his or her paychecks during the months it takes to enroll in, attend, and complete the program. An alternative standard that delivers only a fraction of the reward is not a *reasonable* alternative standard.

40.     Even if Defendants contend that the Plan in fact makes the "full reward" available to participants who complete the cessation program, Defendants fail to clearly and affirmatively disclose that information to participants in the materials they rely on. The SPD describes the

18

surcharge and the higher contributions imposed on tobacco users, but does not inform participants that completion of an alternative standard during the Plan year entitles them to relief from surcharges already assessed, and does not state that any mechanism exists to obtain the full reward during the year. Participants are led to believe that the only avenue to avoid the surcharge is to enroll in and complete the cessation program at some future point, paying the full surcharge in the interim, with no prospect of recovery.

41. Further, Defendants have additional participant-facing materials describing the surcharge that fail to provide the required disclosures, including the annual benefits guide, open enrollment materials info sheets, and tobacco-status attestation forms provided during enrollment that fail to provide the disclosures required by the statute and regulations. *See* 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). Comcast has historically provided informative images and documents—and, upon information and belief, continues to provide similar informative materials—providing facts on the "tobacco user rate," including a flow chart showing the paths available to participants who use tobacco. Comcast's "Get the Facts" fact sheet describes the surcharge through five enumerated "facts." One fact states that "[t]obacco users who set their status as a 'tobacco user ready to quit' and enroll in our Tobacco Cessation Program by April 1, 2013 will keep the tobacco-free rate." Despite describing the tobacco-related premium differential, these disclosures omit the physician-accommodation statement required by 29 C.F.R. § 2590.702(f)(4)(v). Upon information and belief, there are other participant-facing materials that describe the tobacco-related premium differential while omitting the disclosures required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v).

42. The fact sheet's reference to a hard enrollment deadline, after which the participant is funneled into paying the surcharge throughout the year independently violates the

reasonableness requirement. *See* 42 U.S.C. § 300gg-4(j)(3)(B) and 29 C.F.R. § 2590.702(f)(4)(v). A plan cannot make the full reward turn on a brief, front-end enrollment window, even if that window occurs before or at the beginning of the plan year. Such a structure is unreasonable because participants who miss that narrow window, misunderstand the requirement, or simply check the wrong box are denied any meaningful opportunity to obtain the same annual reward available to non-tobacco users. The Final Regulations make clear that "[w]hile an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward* must be provided to that individual as is provided to individuals who meet the initial standard for that plan year." 78 Fed. Reg. at 33163 (emphasis added). In this case, the window was a three-month period. A plan that imposes an unreasonably short window that conditions receipt of the full reward on enrollment by a date certain risks violating the uniform availability of the full reward. By disclosing a structure under which participants who miss the enrollment deadline must pay the full surcharge for the rest of the year, with no retroactive relief mechanism for later completion, Comcast's fact sheet describes a program that is, by its terms, noncompliant with 29 C.F.R. § 2590.702(f)(4)(iv).

43.     Upon information and belief, the participant-facing materials Comcast distributed in connection with the 2025 Plan year, including the materials distributed to Plaintiff, serve the same purpose as the historical materials described above (to inform participants about the tobacco user surcharge) and likewise omit the disclosures required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). Comcast's pattern and practice of describing the surcharge to employees without including the disclosures required by ERISA's wellness program regulations has continued without correction since the surcharge was first introduced.

44.    These omissions independently violate ERISA's wellness program regulations and preclude Comcast from invoking the statutory safe harbor for health-contingent wellness programs. By presenting the tobacco-related premium differential without disclosing "in all plan materials" discussing the surcharge all the avenues for obtaining the full reward, including the physician-accommodation process, Comcast's wellness program is opaque, inaccessible, and administered in a manner that deters participation rather than promoting health. Upon information and belief, Comcast likewise fails to provide compliant notice in other participant-facing communications describing or implementing the tobacco-related premium differential.

45.    ERISA requires that outcome-based wellness programs tied to tobacco use be reasonably designed to improve health, uniformly available to all similarly situated individuals, and supported by a reasonable alternative standard that affords the same full reward regardless of when the participant satisfies the alternative during the plan year. The regulations also require clear notice. Comcast's program, as communicated in its own materials, fails these mandates. Neither the SPD nor, upon information and belief, the core Plan materials make clear that participants who satisfy an alternative standard may qualify for the same premium relief through a physician-directed or other reasonable alternative that makes available the full reward.

46.    Comcast should have provided clear and explicit disclosure that participants who could not satisfy the initial tobacco-use standard had the right to pursue a reasonable alternative standard that would make available the full reward, including a refund of surcharges paid during the period before completion, as well as an additional option to participate in an alternative standard directed by a participant's personal physician. Comcast should have identified that alternative standard in concrete terms—describing it as a "reasonable alternative standard," explaining the right to a physician-directed accommodation, and committing in writing that

completion of that alternative during the Plan year would entitle the participant to a refund of surcharges paid during the period before completion. Had Comcast provided this information in its participant-facing materials, participants like Plaintiff may have understood that they had viable options to avoid the surcharge and may have taken timely steps to obtain the premium relief to which they were entitled under ERISA's wellness program regulations.

47.     Plaintiff paid the tobacco surcharge of $25 per paycheck during the 2025 Plan year. Plaintiff was not told by Comcast or anyone acting on its behalf that completing the cessation program would result in relief from the surcharge for the Plan year in which the surcharge was imposed; was never informed that the cessation program operated as a "reasonable alternative standard" within the meaning of 29 C.F.R. § 2590.702(f); and was never told that he had the right to a physician-directed alternative standard accommodating a participant's personal physician's recommendations. Comcast's failure to disclose all available avenues to avoid or mitigate the surcharge, including the entitlement to a refund of surcharges already paid, deprived Plaintiff and other participants of the information necessary to make informed benefit decisions and independently disqualifies the Plan from ERISA's wellness program safe harbor.

48.     The lack of compliant alternative standards, coupled with deficient disclosures, reflects a program designed and administered more for revenue generation and cost shifting than for bona fide health promotion. By omitting material information and required disclosures, Comcast deprived participants of the ability to make informed choices about their health coverage and financial obligations, violating the regulatory framework governing wellness programs and ERISA's fiduciary duties of loyalty and prudence.

49.     Allowing entities like Comcast to exploit their participants and unlawfully extract substantial sums from them without making available a compliant wellness program transforms

the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This type of conduct violates not only ERISA's anti-discrimination rules governing wellness programs but also the statute's fiduciary duties of loyalty and prudence, as Comcast failed to administer the Plan solely in the interest of participants.

### III. DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

50.     Comcast itself characterizes the tobacco surcharge as a Plan contribution. The SPD states that, for employees who declare as tobacco users (or who default into tobacco-user status by failing to declare), "a $50 per month surcharge is added to the regular required plan contribution." In other words, Comcast withholds the surcharge from participants' paychecks alongside their other premium contributions and treats those amounts as part of the funding stream for Plan coverage.

51.     Comcast administered the tobacco surcharge by designating which participants would be charged and withholding the premium differential directly from participants' paychecks as a Plan contribution, alongside required premium deductions. These deductions are part of the funding stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

52.     Comcast's SPD also confirms the dual-funding structure of the Plan. The SPD states: "Comcast pays a significant portion of the cost of health care coverage for full-time employees (those who are scheduled to work 30 or more hours per week). You pay the rest through payroll deductions." The SPD further confirms that the Plan is a self-funded ERISA plan and that

23

"[m]any of the benefit programs offered are covered under the federal law known as the Employee Retirement Income Security Act of 1974 (also referred to as 'ERISA')."

53.    Upon information and belief, the governing Plan documents make clear that medical coverage is funded by both employer and participant contributions. Comcast commits a defined company contribution amount toward the cost of coverage, with participants paying the balance. By layering a tobacco surcharge on top of those required participant contributions, Comcast created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions, (2) Comcast's promised company contribution, and (3) the additional tobacco surcharge. But instead of allowing all three funding streams to flow into the Plan, upon information and belief, Comcast used the tobacco surcharge to offset or reduce its own funding obligation. Because the cost of coverage for each tier is fixed, every dollar of surcharge collected reduced the company's contribution dollar-for-dollar. Thus, rather than increasing resources available to the Plan, the surcharge simply shifted costs away from Comcast and onto participants.

54.    Once the surcharge amounts were withheld from wages, they constituted Plan assets under 29 C.F.R. § 2510.3-102 and were required to be administered "solely in the interest" of participants and beneficiaries under 29 U.S.C. § 1104(a)(1). Upon information and belief, Comcast failed to deposit the tobacco-surcharge amounts into the Plan's assets in full and instead used those amounts to offset, dollar-for-dollar, its own required company contributions, and to retain float and interest in its corporate accounts until such offset occurred.

55.    This practice constitutes classic self-dealing because Defendants used the mechanisms of the Plan to realize savings for the company, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendants' actions caused the Plan

24

to lose the very employer contributions it was otherwise supposed to receive, in violation of ERISA's fiduciary duty standards.

56.    In doing so, Defendants failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to, for example, offset the premiums of non-smokers, Defendants used the funds to save money for the company. Upon information and belief, the money that Comcast did not have to contribute to the Plan sat in its accounts and earned interest, while the Plan was deprived of the full amount of funding it should have received, stripping the Plan of employer dollars it was owed and converting those savings into financial benefit for Comcast. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under 29 U.S.C. §§ 1104 and 1106.

57.    By layering a $25 biweekly tobacco surcharge on top of participants' required medical premium contributions, Defendants created what should have been a third stream of funding into the Plan: (i) participants' required medical premium contributions; (ii) Comcast's promised Employer contribution; and (iii) the additional tobacco surcharge. Instead of allowing all three streams to flow into the Plan as a benefit to participants, Defendants used the tobacco surcharge to offset and reduce Comcast's funding obligation. Because the cost of coverage for each tier is fixed at the start of each Plan Year, every dollar of surcharge collected reduced the company's contribution dollar-for-dollar. The surcharge did not increase resources available to the Plan; it simply shifted costs away from Comcast and onto participants.

58.    Even apart from this diversion, Comcast separately breached its fiduciary duties through the administration of the tobacco-surcharge program itself. The program fails to make available the "full reward" to participants who would complete the cessation program, omits required disclosures from the materials participants actually rely on during enrollment, and

conditions even baseline qualification as a non-tobacco user on a 30-day look-back period that participants must self-certify. By maintaining and communicating a noncompliant wellness program, and by failing to monitor the terms of the Plan and the wellness program and correct these defects, Comcast acted imprudently and misled participants about their rights under ERISA.

## CLASS DEFINITION AND ALLEGATIONS

59.     Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

60.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, during the relevant time period, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendants.

61.     Excluded from the Class are Defendants' officers and directors. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

62.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(1).

63.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

64.    **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendants' tobacco surcharge discriminates against participants based on a health-status related factor;

b.  Whether Defendants make available a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c.  Whether Defendants provided the required notice in *all* the Plan materials describing the surcharge;

d.  Whether Defendants provided the required statement that participants' personal physicians' recommendations would be accommodated in all Plan materials describing the surcharge;

e.  Whether Defendants' wellness program violates ERISA and the Final Regulations;

f.  Whether Defendants breached their fiduciary duties by collecting and retaining the tobacco surcharge to offset their own contributions to the Plan;

g.  Whether Defendants breached their fiduciary duties by administering the Plan that refuses to reimburse participants who complete an alternative standard;

h.  Whether Defendants breached their fiduciary duties by failing to periodically review the terms of their wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

i.  Whether Comcast breached its fiduciary duty by failing to monitor the activities of the Committee;

j.  The appropriate mechanisms to determine damages on a class-wide basis.

65.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

66.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health

and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

67.     Plaintiff seeks declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendants will be allowed to profit from their unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide declaratory relief is issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO MAKE AVAILABLE A REASONABLE ALTERNATIVE STANDARD
**(Violation of 29 U.S.C. § 1182(b) and 42 U.S.C. § 300gg-4(j)(3)(B)–(D); 29 C.F.R. § 2590.702(f)(4)(i)–(iv))**

68.     Plaintiff re-alleges and incorporates herein by reference allegations 1–67 of this Complaint.

69.     ERISA prohibits group health plans from charging participants more for coverage based on a health-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). A tobacco surcharge is therefore unlawful unless the plan satisfies *each* condition of the narrow wellness-program exception. *Id.* §§ 1182(b)(2)(B), 300gg-4(b)(2)(B). Tobacco use is a health-related factor. A tobacco surcharge is therefore unlawful unless the plan satisfies every condition of the narrow statutory and regulatory exception for health-contingent wellness programs. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. §§ 300gg-4(b)(2)(B), 300gg-4(j)(3).

28

70.     Among those mandatory conditions, a plan must make the same, full reward available to every participant who satisfies a reasonable alternative standard. 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv). The full reward requirement is a rule of uniform economic treatment: participants who satisfy the alternative standard must receive the same reward made available to similarly situated participants who satisfy the Plan's initial tobacco-use standard, not a prorated, prospective, or otherwise diminished portion of that reward.

71.     Defendants unlawfully impose a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $25 per paycheck on participants who use tobacco, without complying with the regulatory requirements, Defendants are violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendants' decision not to provide a reasonable alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

72.     Defendants' program was not reasonably designed to promote health or prevent disease because it conditioned relief from the tobacco surcharge on compliance with an unreasonably narrow, front-loaded enrollment process. Participants who failed to enroll during the brief period at or before the beginning of the Plan year, misunderstood the requirement, or simply checked the wrong box were locked into paying the surcharge for the remainder of the year, regardless of whether they later stopped using tobacco, requested an alternative standard, or completed any tobacco-cessation requirement.

73.     A reasonable alternative standard must be meaningfully available. It is not meaningfully available where the participant's practical ability to obtain relief turns on navigating a narrow enrollment window before the participant has paid most or all of the challenged surcharge. By imposing a hard deadline near the start of the Plan year and denying participants a

later opportunity to obtain the same annual reward, Defendants made the alternative standard illusory for participants who missed that window.

74.    The Plan's structure also violates the requirement that eligible participants be given an opportunity to qualify for the reward at least once per year. 42 U.S.C. § 300gg-4(j)(3)(C); 29 C.F.R. § 2590.702(f)(4)(iii). A participant is not given a meaningful annual opportunity where the only practical opportunity is compressed into a short enrollment period at the beginning of the year, and where missing that period results in the participant being charged the full annual surcharge without a realistic path to later obtain the reward.

75.    Defendants further violated the full reward requirement. The reward at issue was the removal or avoidance of the $25-per-paycheck tobacco surcharge for the Plan year. Participants who satisfied a reasonable alternative standard were entitled to receive the same total annual economic benefit as similarly situated participants who satisfied the initial tobacco-use standard. Defendants could not satisfy ERISA by offering only prospective relief, partial relief, or no relief to participants who completed the alternative standard after the enrollment deadline.

76.    By failing to provide participants who satisfied an alternative standard with the entire annual reward, Defendants caused those participants to pay more for coverage than similarly situated non-tobacco users. That is precisely the health-status discrimination ERISA prohibits unless every condition of the wellness-program exception is satisfied.

77.    Defendants' surcharge program therefore failed to satisfy the statutory and regulatory requirements for health-contingent wellness programs, including the reasonable-design requirement, the annual-opportunity requirement, and the same-full reward requirement. See 42 U.S.C. § 300gg-4(j)(3)(B)–(D); 29 C.F.R. § 2590.702(f)(4)(i)–(iv).

78.     Because Defendants failed to comply with those mandatory conditions, the tobacco surcharge was not protected by the wellness program exception and was unlawful under ERISA.

79.     As a direct result of Defendants' unlawful conduct, Plaintiff and members of the Class paid discriminatory tobacco surcharges they should not have been required to pay and were denied the full annual reward to which they were entitled.

80.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes Plaintiff and Class Members to seek appropriate equitable relief to enjoin Defendants' unlawful practices, redress Defendants' violations, and enforce ERISA and the terms of the Plan. Plaintiff and Class Members are therefore entitled to appropriate equitable relief, including restitution, disgorgement, surcharge, an accounting, declaratory and injunctive relief, and such other relief as the Court deems just and proper.

## COUNT II
### UNLAWFUL TOBACCO SURCHARGE - FAILURE TO PROVIDE REQUIRED NOTICE
### (Violation of 29 U.S.C. § 1182(b), and 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v))

81.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82.     Defendants' tobacco surcharge program is not and was not a permissible wellness program because they failed to provide proper notice of the availability of a *reasonable* alternative standard, in violation of 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v).

83.     The statute and regulations require Plan materials describing the surcharge to disclose "the availability of a *reasonable* alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added); 29 C.F.R. § 2590.702(f)(4)(v). The cessation program Defendants identify in

31

the SPD is, on its face, an alternative standard; however, it is not a *reasonable* one. To be reasonable, an alternative standard must provide "the same, full reward" as is provided to participants who satisfy the initial tobacco-free standard, regardless of when the participant satisfies the alternative during the Plan year. *See* 78 Fed. Reg. at 33163; 29 C.F.R. § 2590.702(f)(4)(iv). The alternative Defendants specified does not. It eliminates the surcharge only prospectively, with no disclosed mechanism for the participant to recover surcharges already deducted from his or her paychecks during the months it takes to enroll in, attend, and complete the program. Because the alternative Defendants identified in the materials describing the surcharge does not make the full reward available, Defendants have not disclosed a *reasonable* alternative standard at all, and the notice fails as a matter of law.

84. As detailed above, Defendants have historically distributed, and upon information and belief continues to distribute, additional participant-facing communications describing or implementing the tobacco-related premium differential, including the "Get the Facts" fact sheet and infographics, without including the disclosures required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v). These materials do not: (a) disclose that completion of the cessation program during the Plan year entitles a participant to relief from surcharges already assessed; (b) include the physician-accommodation statement required by 29 C.F.R. § 2590.702(f)(4)(v)(B); or (c) frame the cessation program as a "reasonable alternative standard" within the meaning of the wellness program rules. To the contrary, those materials affirmatively describe the surcharge structure in a manner inconsistent with the full reward rule, including by referencing a hard enrollment deadline for the cessation program after which tobacco users will pay the tobacco user rate for the remainder of the Plan year with no disclosed mechanism for later-completing

32

participants to obtain the full reward. These notice failures further compound the SPD's defects and independently preclude Defendants from invoking ERISA's wellness program safe harbor.

85. These notice failures independently violate ERISA's wellness program regulations, which require that "all plan materials" describing a health-contingent wellness program clearly disclose the availability of a reasonable alternative standard and a physician-accommodation statement advising participants that their physician can be involved in the development of an alternative standard.

86. Notice is a key element of the statutory and regulatory framework, and one of the criteria that must be satisfied to have a compliant wellness program. Because Defendants failed to provide notice of a reasonable alternative standard, the imposition of the tobacco surcharge constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

87. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendants' surcharge program does not satisfy the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendants cannot qualify for the statutory safe harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT III
**BREACH OF FIDUCIARY DUTY AND PROHIBITED TRANSACTIONS**
**(PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**
**(Brought Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2))**

33

88.     Plaintiff re-alleges and incorporates herein by reference all prior allegations of this Complaint.

89.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1), 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

90.     At all relevant times, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). As the SPD itself confirms, "[t]he Plan Administrator has the discretionary authority and the responsibility to, among other things, interpret the Plan provisions, and to exercise discretion where necessary or appropriate in the interpretation, administration, and determination of eligibility for benefits under the Plan."

91.     Outside of its role as Plan sponsor, Comcast exercised fiduciary discretion in the administration of the Plan and its assets after the Plan was designed, including in the collection, handling, and disposition of surcharge proceeds, which became Plan assets upon collection from participants (*see* 29 C.F.R. § 2510.3-102) and in the ongoing monitoring of, or failure to monitor, the Committee and the Plan's administration to ensure compliance with ERISA over multiple Plan Years.

92.     On information and belief, Defendants used Plan assets (i.e., the surcharge proceeds withheld from participants' paychecks) to offset, dollar-for-dollar, Comcast's own funding

obligations to the Plan, rather than depositing and retaining those Plan assets in trust to fund benefits and accumulate reserves. Comcast's SPD confirms the dual-funding structure that frames this self-dealing: Comcast "pays a significant portion of the cost of health care coverage" and participants "pay the rest through payroll deductions." Comcast itself has acknowledged in the SPD that the surcharge "is added to the regular required plan contribution." That is, the surcharge is a Plan contribution, subject to the same fiduciary duties that govern any other Plan asset. Defendants breached their fiduciary duties by assessing and collecting the surcharge in violation of federal law and the Plan's own terms and then applying those amounts to reduce, dollar-for-dollar, Comcast's own funding obligations. Upon information and belief, Comcast further profited by retaining the surcharge amounts in its own corporate accounts, earning float and interest, before those amounts were used to reduce Comcast's funding obligation. The resulting harm is a Plan-level harm: the Plan received less employer funding than the Plan's funding structure required, because participant contributions were used to satisfy a share of Comcast's obligation to fund Plan benefits.

93.    Defendants further breached the duty of loyalty by preparing and disseminating participant-facing materials that described the wellness program but omitted material information ERISA requires in all plan materials describing the wellness program, including a statement that the recommendations of an individual's personal physician will be accommodated. *See* 29 C.F.R. § 2590.702(f)(4)(v); 42 U.S.C. § 300gg-4(j)(3)(E). As fiduciaries, Defendants had a duty to communicate truthfully and completely about the Plan's terms in *every* participant-facing material describing the program, not the SPD alone. Enrollment and benefit guides are documents participants consult at open enrollment to make their tobacco-user election. Defendants' omissions

from those documents deprived participants of the information necessary to make a fully informed election or to pursue an alternative path to the full reward.

94.     Year after year, the Committee administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21). Upon information and belief, the Committee participated in the effort to funnel surcharge funds into the Company's general assets while administering a wellness program with an unreasonably short enrollment window and an alternative standard that resulted in two classes of similarly situated participants who received different economic rewards.

95.     Upon information and belief, the Committee controlled and disseminated Plan communications, including the participant-facing materials describing the surcharge without providing the necessary disclosures, most notably the physician-accommodation statement. The Committee also failed to conduct periodic, prudent reviews of the wellness program's design and its participant-facing communications to ensure compliance with ERISA. Instead, it allowed a deficient program that produced disparate treatment among similarly situated tobacco users to persist year after year, despite its discriminatory effect and clear inconsistency with the full reward rule.

96.     The Committee further breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by permitting surcharge funds to offset Comcast's own funding obligations and by maintaining a program that granted the full reward to one subset of similarly situated participants (timely enrollers) while withholding it from another (late enrollers), in direct violation of 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv)'s requirement that "[t]he full reward . . . be available to all similarly situated individuals." It also failed to include the notice required by 29 C.F.R.

36

§ 2590.702(f)(4)(v). These omissions and design choices are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

97.     ERISA also imposes on appointing fiduciaries (i.e., Comcast) the duty to monitor and supervise the actions of those administering the Plan (i.e., the Committee). By allowing administrators and benefits staff to implement and maintain a non-compliant wellness program that violated ERISA's notice and full reward requirements, Comcast breached its duty to monitor. Comcast failed to review the program's design, the disposition of surcharge proceeds, and the accuracy of participant communications, despite its obligation to ensure the Plan's ongoing compliance with federal law.

98.     As a result of these breaches, Comcast was unjustly enriched at the expense of the Plan and its participants. By deducting surcharges directly from employees' paychecks without administering a compliant wellness program or providing full-year reimbursement, the Committee secured financial savings for the employer while shifting costs to participants. The structure and administration of the program ensured that not all "similarly situated individuals" could receive the full reward, and participants were deprived of clear notice of the reasonable alternative standard. In effect, Defendants converted employee contributions (i.e., Plan assets) into a source of corporate savings, in violation of 29 U.S.C. § 1104(a)(1)(A).

99.     By withholding unlawful surcharges and using those funds to offset Comcast's financial obligations, Defendants caused the Plan to engage in transactions constituting a direct or indirect transfer of Plan assets for the benefit of a party-in-interest—namely, Comcast—in violation of 29 U.S.C. § 1106(a)(1). Comcast is a party-in-interest under 29 U.S.C. § 1002(14) because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's administration and finances.

100.   Comcast's conduct caused harm to the Plan. The Plan was deprived of assets that should have been deposited, retained, invested, and used to fund benefits and accumulate reserves for participants. Instead, those assets were used to reduce Comcast's own corporate contribution obligation. The Plan also suffered an opportunity-cost loss. Had Comcast either refrained from collecting unlawful surcharge amounts or treated those amounts as supplemental Plan funding rather than as a substitute for its own contribution obligation, the trust would have held more assets, accumulated greater reserves, and maintained a stronger funding base.

101.   Comcast also obtained wrongful profits from its use of Plan assets. The savings Comcast achieved by offsetting its own actuarially determined contribution obligation were profits made through the use of Plan assets. Under ERISA § 409(a), Comcast, the Committee, and the Committee's individual members are liable to "restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." 29 U.S.C. § 1109(a).

102.   As a direct and proximate result of these fiduciary breaches, Plaintiff seeks Plan-wide relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). Defendants are liable to make good to the Plan all losses resulting from their breaches, restore all profits obtained through the use of Plan assets, disgorge the corporate savings Comcast achieved by offsetting its own contribution obligations, and provide other appropriate equitable relief, including an accounting, constructive trust, equitable lien, and removal or replacement of fiduciaries who breached their duties. *See* 29 U.S.C. § 1109(a).

**COUNT IV**
**BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)**
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

103.   Plaintiff re-alleges and incorporates herein by reference each preceding allegation of this Complaint as if fully set forth herein.

104.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant to seek individualized equitable relief for a fiduciary's breach of duty. Defendants breached their fiduciary duties by collecting unlawful tobacco surcharges from participants, treating those amounts as Plan assets, and using them to reduce the Company's own contribution obligations rather than administering them solely for the benefit of participants and beneficiaries. That same conduct also constituted prohibited transactions under 29 U.S.C. § 1106(a)(1)(D) and § 1106(b)(1), because Comcast used Plan assets for its own benefit.

105.    Plaintiff suffered individualized harm from Comcast's conduct. He paid tobacco surcharges that should not have been imposed. He was also deprived of the benefit of having those contributions deposited, retained, and used in the Plan's trust to fund benefits and accumulate reserves solely in participants' interests. Because the Plan's funding structure ties participant contributions to the Plan's assets, reserves, and expected benefit obligations, Plaintiff also bore, and continues to bear, higher contribution costs and increased risk of future cost increases or benefit reductions.

106.    Plaintiff and the Class therefore seek individualized equitable relief under 29 U.S.C. § 1132(a)(3). That relief includes equitable restitution of unlawfully collected surcharge amounts traceable through Defendants' handling and commingling of Plan funds; disgorgement of profits and corporate savings Comcast obtained through its use of Plan assets; an accounting of all surcharge amounts collected and used to offset Comcast's contribution obligations; imposition of a constructive trust or equitable lien over funds wrongfully retained by Comcast; and declaratory relief prohibiting Comcast from continuing to administer a noncompliant wellness program or using Plan assets to reduce its own contribution obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendants to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory relief as necessary and appropriate, including an Order that Defendants' program was unlawful and that Defendants should not further violate the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G.  Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H.  Restitution of all surcharge amounts Defendants collected;

I.  Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of their collection of the unlawful and discriminatory tobacco surcharges;

J.  Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.  An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.  An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.  Any other relief the Court determines is just and proper.

Dated: June 17, 2026                    Respectfully submitted,


                                        /s/ Michael Connett
                                        ———————————————————

                                        Michael Connett (P311859)
                                        **SIRI & GLIMSTAD LLP**
                                        Oren Faircloth (*pro hac vice* forthcoming)
                                        William H. Payne (*pro hac vice* forthcoming)
                                        700 S Flower Street
                                        Suite 1000
                                        Los Angeles, CA 90017
                                        Tel: (888) 747-4529
                                        E: mconnett@sirillp.com
                                        E: ofaircloth@sirillp.com
                                        E: wpayne@sirillp.com

                                        *Attorneys for Plaintiff and the Proposed Class*